The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Katherine E. Zienoff presiding. Good morning, Council. This is 423-1069 and 423-1197, Rheinhart v. Loving, Loving Capital Management and True Advice, LLC. At this time, would both counsel for the appellants introduce themselves? Maybe Mr. Micelli first? Good morning, and may it please the Court, my name is John Micelli. I represent Defendant Appellant True Advice, LLC. Sorry, I mispronounced your name. It's Micelli, is that correct? That's correct. Thank you. Thank you. Mr. Watts? Good morning, Your Honors. May it please the Court, my name is Josh Watts. I am counsel for Appellants Timothy R. Loving and Loving Capital Management. Thank you. And counsel for the appellee? Good morning, Your Honors. May it please the Court, Benjamin Patterson for the Plaintiff Appellee, Don Rheinhart. All right. Thank you very much. And at this time, it's my understanding that you will be starting the argument, Mr. Watts, is that correct? That's correct, Your Honor. Okay. At this time, then, you may begin. May it please the Court. Justices, good morning. My name is Josh Watts, as I recently explained, and I represent Appellants Timothy Loving and Loving Capital Management. Appellee cannot have his cake and eat it, too. The underlying suit alleges that appellants had a fiduciary duty to advise appellee as to his financial assets as of March 6, 2020. But in this appeal, appellee disavows the agreement that establishes the advisory relationship and states that its arbitration clause does not control alleged interactions that preceded it. Appellee cannot have it both ways. Either appellee must be bound by the agreement that governed the advisory relationship pled, or there was no agreement and no duties arose under Illinois law to allow appellants to be liable for appellee's claims. On March 6, 2020, appellee approached Appellant Timothy Loving to manage appellee's financial assets. On that same day, appellee called his then-current financial custodian to move his assets under appellant's management. Appellee was then informed by the custodian that this transfer could take up to 30 days. Appellee signified his understanding and withdrew a substantial but lesser amount to hold him over until the transfer could be completed. But as we can all recall shortly thereafter, the unprecedented occurred. On March 11, 2020, the World Health Organization declared COVID-19 to be an international pandemic and further declared a global health emergency. The resulting upheaval in the financial markets is well known. Appellee holds that his financial assets suffered from a drop in value from this upheaval. Appellee also holds, however, that Appellant Loving was responsible for failing to predict the upheaval and to prevent the resulting harm. Under the Federal Arbitration Act and the Illinois Uniform Arbitration Act, the trial court's decision to compel arbitration is not discretionary. Where there is a valid arbitration agreement, matters within its scope must be compelled to arbitration. The standard of review for a denial of a motion to compel arbitration, as here, is de novo. Hollingshead v. A.G. Edwards is instructive. Hollingshead involved in action like this one against financial advisors for breach of fiduciary duty and negligence arising out of the sale of securities. Hollingshead made clear that the court's initial and only function is to determine, quote, the threshold question of whether the defenses raised by the plaintiff invalidate the arbitration provisions, end quote. Hollingshead outlined the path of this threshold question and found that because the contracts covered all the accounts the plaintiff had with the financial advisor at any time, and the arbitration provision covers all the controversies between the financial advisor and the plaintiff, the plaintiff raising claims about conduct regarding the same is subject to arbitration. As in Hollingshead, here, appellee does not seek to apologize. Good morning. I have a question I'd like to ask you. You raised the issue of who decides the gateway issue of arbitrability. You argue that the arbitrator should have decided this gateway issue. However, your clients did not raise that issue below. In fact, they urged the trial court to find that the plaintiff's claims did fall within the scope of the arbitration agreement that was entered into March 31st. I think the case, I'm sure you're familiar with McMath v. Cotholey, our Supreme Court said there that a party cannot complain of error, which he induced the trial court to make or to which he consented. So doesn't this invited error doctrine bar your clients from arguing that the arbitrator should have decided this issue of arbitrability? Thank you, Your Honor. I do believe that my client and John Michelli's client did raise the argument that the circuit court was not supposed to be deciding the applicability of the arbitration agreement such that they are only required to decide the validity of an arbitration agreement. In fact, those are two separate and distinct things. As discussed in this case, Pelley has not raised any invalidity arguments. In fact, it is the appellant's argument that the court is not allowed to decide the threshold question of applicability only to decide the threshold question of validity of the contract. So as in Holland said here, Pelley does not seek to invalidate the contracted issue. Pelley only raises claims of applicability. As in Holland said here, the agreement containing the arbitration clause covered all of Pelley's accounts with appellant from the time of their existence and the arbitration agreement covers, quote, all claims or controversies and any related issues, end quote, between Pelley and appellants. Did I answer your question, Your Honor? I'm not sure, actually. The agreement says, and I'm going to quote, any arbitration pursuant to this agreement shall be conducted in accordance with and governed by a mutually agreeable arbitration form, but in the absence of that, then the American Arbitration Association and its code of arbitration procedure. Isn't this language pertinent? And I believe you had indicated in your brief that it clearly and unmistakably delegated the gateway. So we're talking about gateway issues to an arbitrator. Why would this be applicable here? Your Honor, this is a very, very apt point. That example of that language is an example of the parties going above and beyond what is required by the case law to make sure that everybody understands that the gateway question of arbitrability is to be decided by the arbitrator and not the courts. And again, have to draw a distinction between arbitrability, as it falls within the scope of the agreement, and validity of a contract. Well, under case law construing this federal arbitration act, unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate, that's the question we're dealing with, is to be decided by the court and not the arbitrator. Isn't that what the case law says? That is indeed what the case law says, Your Honor. And in fact, that is exactly what we were stating, is that whether or not the parties have an agreement to arbitrate, whether or not the contract, the agreement, the contract is valid and enforceable agreement. That is what the courts are stating in that case law. All right, but here, the agreement did not clearly and unmistakably delegate the issue of arbitrability to the arbitrator. While the agreement may have referenced the American Arbitration Association, this is different than the Mikov case. And here, the language was a little more nuanced in general, and just said, any arbitration shall be governed by a mutually agreeable arbitration form, but in the absence of such agreement, then the American Arbitration Association. So this is not a Mikov situation. It didn't meet the requirements. And again, this wasn't raised in this way below. So how and why are you arguing this before this court? Your Honor, I would like to address and say that I believe it is appellant's argument, and I will state that it is appellant's argument, that the arbitration agreement relating to the American Arbitration Association was directly laid out in the agreement, such that it is clear that the arbitration provision, the gateway question, should be decided by the arbitrator. Beyond that, though, there is case law that indicates, and specifically I'm referring to Smola v. Greenleaf Orthopedic, where the court held that the trial, it's beyond actually, the appellants were going above and beyond the requirements when they indicated that the American arbitration rules covered whether or not the gateway arbitration agreement was to be decided by the arbitrator. Because in Smola, the court held that the trial court had to decide whether there's an arbitration agreement. It may only decide the scope of the agreement where the terms are clear, or where the parties are in conflict as to the scope of an agreement, and that is without question here. And the questions presented are reasonably debatable. Such questions are left to be decided by the arbitrator in the first instance. Indeed, Smola went a step further when it held that even when the party's agreement is silent with respect to an arbitrator's authority, the decision should be left to the arbitrator in the first instance. Thank you. Any other? I believe I have answered your question this time, Your Honor. Okay. We have the issue before us of whether the plaintiff's claims are included. In the language of the arbitration agreement, and then should have been subject to arbitration, regardless at this point of who should have decided the issue of arbitrability. The plaintiff argues that the provision here, paragraph 17, included the words which may arise indicating a look to the future that is forward-looking and would not apply to past conduct. This is what happened on March 6th. So why should we not accept this argument? Isn't the language pretty clear in this paragraph 17? So I want to be very clear. Given the overlapping nature of appellant's arguments on appeal, we have divided our time and our arguments between us. This will also be addressed by Mr. Michelli, counsel for true advice. But in the first instance, I would like to state that the Federal Arbitration Act reflects a liberal policy, federal policy, favoring arbitration agreements. And actually, Illinois has followed suit with the Illinois Uniform Arbitration Act. These liberal policies towards favoring arbitration, and in fact, Illinois has gone a step further and, quote, considers arbitration to be a favored method of settling disputes. And that's Harts v. Brown Preparatory School. However, we have Clanton, an Illinois Supreme Court case recently decided that tells us that where the parties have agreed upon this, we need to look at the contract to determine the party's intent. Do we not? We do, Your Honor. And my only contention is that the case law indicates that any ambiguity should be decided in favor of arbitration, given that it's a preferred status or method of settling disputes. And this is true in Smaller v. Greenleaf. This is true in Hollingshead as well. There is no dispute that courts are capable of answering questions as to the scope of Illinois contracts. In the context of arbitration agreements, however, the Federal Arbitration Act, the IUAA public policy, and the weight of judicial precedent has delegated this question to the arbitrator. Appellants therefore ask this court reverse the circuit court's order denying appellants' motion to dismiss and compel arbitration and remand the matter with instructions to dismiss or stay the action pending a termination of arbitrability by the arbitrator. As stated previously... Would you be opposed to an order, if we were to remand this for arbitrability to be arbitrated, that the claims be stayed as opposed to dismissed? Appellants, Timothy Loving and Loving Capital Management are not opposed to such an order. Thank you. Thank you very much. Mr. Michelli? Good morning and may it please the court. If at any point in time during this argument you have trouble hearing me, please let me know. As I stated earlier, my name is John Michelli. I represent Defendant Appellant True Advice LLC. The circuit court erred when it denied defendants' motion to compel arbitration. Specifically, the language of the provision at issue is not ambiguous because a plain and ordinary reading of the provision makes it abundantly clear that the party is intended and agreed to arbitrate plaintiff's claims. As Mr. Watts stated earlier, on March 31, 2020, plaintiff executed the True Advice Investment Management Agreement. The agreement itself contains a valid and enforceable arbitration provision under which plaintiffs agreed to resolve any and all disagreements by final and binding arbitration. And importantly, the agreement to arbitrate covers all claims or controversies and any related issues which may arise at any time. The agreement then goes on to include the agreement of the parties to arbitrate not only claims that arise under disagreement, but also under prior agreements between the parties. Counsel, how is there a relationship between your client and the plaintiff before this written agreement was signed on March 31? How is there a relationship out of which any claims could have arisen? You raise a very good question. Now, Your Honor, what plaintiff is claiming here is that there was some form of a relationship that existed or was entered into prior to March 31. However, the complaint does not allege when plaintiff hired Loving or defendants, and instead he merely states that he hired Loving to help manage his IRA. So outside of this, the only document in the record reflecting the formation of any relationship between the parties is the investment management agreement. Now, if his plaintiff argues his claims arise out of some prior agreement with Loving regarding the management of his assets, then those claims fall squarely within the scope of the arbitration provision that they issue and should be compelled to arbitration. Now, the circuit court erred when it denied defendant's motion to compel arbitration because plaintiff's claims fall squarely within the scope of the arbitration provision at that issue. Specifically, the provision covers all claims or controversies and any related issues which may arise at any time and goes on to include specific language calling for the arbitration of claims arising out of prior agreements. Now, we acknowledge that there was no written contract or agreement between plaintiff and defendants that predates March 31st. However, here plaintiff is claiming that there was some prior agreement that allows him to bring his claims. If that's the case, then those claims arising out of a prior agreement fall squarely within the scope of the arbitration provision that they issue. And plaintiff's brief points out that the best indication of the party's intent is found in the plain and ordinary meaning of the language of the contract. Here, the very first sentence of section 17 makes the party's intent abundantly clear. That first sentence states plaintiff's agreement with defendants to resolve any and all disagreements by final and binding arbitration. The provision also expressly states that the parties agreed to arbitrate all claims or controversies and any related issues and goes on to include specific language reflecting the intention of the parties to arbitrate claims arising out of prior agreements. So contrary to plaintiff's argument, the arbitration provision makes it abundantly clear that the parties agreed and intended to arbitrate and resolve any and all disagreements by final and binding arbitration. Now... I would just add and ask, the trial court disagreed that the language in this provision was clear and felt that certainly the words which may arise were ambiguous. And so that the temporal scope of this arbitration clause was ambiguous. And so if we were to agree with the trial court on that, why shouldn't we apply the principle of contract interpretation that any ambiguities as the trial court did apply should be construed against the drafter? Why shouldn't it be construed against true advice? So your honor, the interpretation that plaintiff has used that the term may arise makes the entire provision forward-looking, requires an unreasonable interpretation that goes well beyond the plain and ordinary meaning of the language contained in the agreement. The arbitration provision must be read in its entirety. Now, the plain and ordinary reading of the provision reflects the intention of the parties to arbitrate all claims arising out of disagreement and prior agreement. And if, as plaintiff is claiming, there was a prior agreement between himself and Loving regarding the management of his assets, then those claims fall squarely within the scope of the arbitration provision because it specifically includes language reflecting the intention and agreement of the parties to arbitrate claims arising out of prior agreement. Thank you. So in closing, the circuit court erred when it denied defendant's motion to compel arbitration because the agreement is clear. The parties are required to arbitrate all claims or controversies and any related issues, including claims arising under prior agreement. If, as plaintiff is claiming, his claims are based on some prior agreement with Loving regarding the management of his assets, then his claims are subject to arbitration. It's for these reasons that we are respectfully requesting that the court reverse the circuit court's September 28, 2023 order and compel plaintiff's claims to arbitration. Thank you. I have two follow-up questions, counsel. One to your last statement. In your request to reverse the trial court, are you comfortable with staying the balance of the claims as opposed to ordering dismissal of the claims? Yes, Your Honor. Pending arbitration. Should that be the court's ruling? I'm not indicating in any way it would be, but I wanted to clarify because there's some difference in the briefs. Is that way, is that the way that the court decided we would agree to that? And I had one other quick follow-up question. With respect to the issue of jurisdiction, to address the arguments with respect to the merits of plaintiff's claims, you did argue that your advice did not owe a fiduciary duty to the plaintiff before this agreement on March 31st, that the plaintiff's negligence claims were barred by the economic loss doctrine. But we're focused on Supreme Court Rule 307A1, which authorizes appeals from interlocutory orders with respect to injunctions, whether it's to grant or dissolve or modify an injunction. Do you not agree that your arguments directed to the merits of plaintiff's claims do not fall within this 307A1 provision? I'm not necessarily sure if I'm following your question. We would not have jurisdiction to address these substantive claims that you argue in your brief, would we? This is a interlocutory appeal pursuant to 307A1. These three arguments, these substantive arguments are not related to the language of 307A1. An appeal from an interlocutory order granting, modifying, refusing, dissolving or refusing to dissolve or modify an injunction. How would this protect jurisdiction to address those arguments? So before the circuit court, we filed the motion to dismiss and compel arbitration. With our appellate brief, we included the arguments concerning our 619 motion because reviewing courts are allowed to rely on grounds other than those relied upon by the trial court. This court may reverse the trial court's denial of that motion based on the grounds that are presented. I think that would be, the rule is to affirm a judgment, not to reverse it, is it not? Isn't that what the case law says? All right. We possibly disagree on that. Thank you, counsel. Justice Connick, do you have any further questions of either counsel or Justice Bansal? I do not. Thank you. Mr. Patterson? Thank you, Your Honor. May it please the court, counsel. Plaintiff's position in this case is simple and straightforward. As has been established in the briefing and the arguments this morning, Mr. Reinhart's claims in this case arose from events that took place between March 6th and March 30th of 2020. Had Mr. Reinhart filed suit on March 30th, 2020, we wouldn't have a dispute. We wouldn't be here. And that's because the very next day he signed an agreement with True Advice that included an arbitration that is at issue here today. But I think it's important that we go back and note that from the events of March 2020, between March 6th and March 30th, Mr. Reinhart filed this suit. And he's got two causes of action in his suit. One is a common law breach of fiduciary duty claim. And the second is a common law negligence claim. Importantly, Mr. Reinhart did not allege a breach of contract claim. He did not even allege the existence of a contract or the terms of said contract. And in fact, even True Advice concedes in both its initial brief and its reply brief that there was no agreement between Mr. Reinhart and True Advice prior to the March 31, 2020 agreement. And what that means is necessarily for this court to reverse the circuit court, this court must necessarily find that there's language in that agreement in the arbitration language that applies retroactively to those claims that took place to the events that took place prior to its signing. And I hear the defendants make two arguments in support of their position. One is a reliance on the language in the arbitration of the arbitration provision that states that it applies to any claims that may arise at any time. And there's a focus on the at any time language. And the second argument is the language that discusses arbitration applying to controversies, disputes arising to any prior agreement. And I'll address each of those in turn. With respect to the at any time language, the interpretation that the defendants advocate is a dangerous one. And it's dangerous because if that interpretation is followed, what it does is it allows an opportunity for a situation where one party and this isn't in the record, I'm speaking hypothetically, but where one party such as Mr. Reinhart may have a claim arise and the other party such as TrueAdvice may be aware of that claim and then try to sort of backdoor an arbitration provision in to capture that claim into arbitration. In other words, it provides an opportunity for one party to take advantage of another party that may or may not realize they have a claim by subjecting that claim into arbitration. And I think a hypothetical and illustration would be helpful to understand it. The at any time language, the purpose of it is also forward looking. So if we were to change the facts to illustrate a point, if we were to change the facts that all of the events took place in January of 2020 and this agreement was signed March 31st of 2020. But 30 days later, Mr. Reinhart said, you know what? I'm I'm not happy with this agreement. I'm going to terminate this agreement. I hereby terminate this agreement. And then the next day filed suit for those events that took place back in January. Certainly, the defendants would be in here and would be in court arguing that the at any time language requires those claims from January of 2020 to be subject to arbitration. And I don't think Mr. Reinhart would have a defense to say, well, no, I terminated that agreement and I filed my case afterwards. And so that's that's the purpose of the at any time language. But counsel, I think are you not isolating a couple of phrases in this paragraph? The phrases, the one you're just focusing on, certainly the words may arise. First of all, as I mentioned, the Clanton case, the Illinois Supreme Court case tells us, does it not to look at the intent of the parties by looking at the whole agreement, all of the language and certainly the first sentence of this section regarding arbitration does say client agrees with advisor to resolve any and all disagreements by final and binding arbitration. I don't know how there could be any broader language and there is no temporal limitation with respect to that. So how do you reconcile this very broad language with the approach you're proposing that there is a temporal restriction? First of all, I agree with you, Your Honor, that the entire agreement should be examined for the intent of the parties. Our position on the broad language client agrees with advisor to resolve any and all disagreements by binding arbitration is that there are examples, clear examples in the law and we've cited them in our brief, where existing controversies and existing disputes can be subject to arbitration, but the specific language has to be there. And that's why I started my argument with the illustration, with the point that in order for this court to reverse the circuit court, there has to be a retroactively and we've cited to the Illinois arbitration act, both which give illustrative language of how to bring an existing controversy into arbitration, to have it apply retroactively. And our position is that that language, as broad as it is, does not look   retroactive language, which may arise at any time. How do we interpret at any time? Doesn't that because of its generality include retroactive as opposed to present and future? Respectfully, your honor, we disagree. The language may arise at any time. Our position is that if Mr. Loving wanted this document to apply to existing claims or prior claims, it should say so. Client agrees to resolve any and all disagreements, existing disagreements, existing controversies. It just says all claims or controversies which may arise at any time. Our position is that that's purely forward-looking. Mr. Patterson, how do you reconcile that with the language later on in that same paragraph of the contract where it says whether entered into prior to on or subsequent to the date of this agreement or any other agreement between you and us whether entered into prior to and so forth. True Advice has taken the position very clearly in both its initial brief and its reply brief that there was no prior agreement between you and us, Mr. Reinhart, and True Advice does not involve breach of any agreement or prior agreement. It's common law fiduciary duty and common law negligence. And neither of those  those do not require an agreement to exist, and we haven't alleged an agreement in support of those claims. So that language, Your Honor, our position is that it's not applicable because there's no dispute over the construction performance or breach of this or prior agreement between True Advice and Mr. Reinhart. And so last point I wanted to address was just the additional arguments, the substantive arguments that have been made before this court. This court is by rule 307A1 is limited to the arbitration issue, and therefore those claims are not properly before this court and should not be considered. I also want to take just a minute, I know I've got some time left to address the sort of the gateway question, and I think our position is consistent with some of the questioning that was raised, and that is that we do believe the circuit court properly addressed the question of whether the claims were subject to arbitration. That was not an issue that should have been deferred to the arbitrator in this case. And so for these reasons, we would ask that this circuit court in its entirety. Thank you. Thank you. Any further questions, Justice Connect or Justice Fancel? Thank you, counsel. And Mr. Michelli or Mr. Watts, who will be responding? I will respond first, Your Honor. All right, and you know there's a total of five minutes. Thank you for both of you. Not each, but both. Okay, just to clarify. Thank you. First, I'd like to address Apelli's backdoor argument. As indicated by him, there is no implication of appellants taking advantage of Apelli or backdooring an arbitration agreement on him in this case. But were there, courts are still allowed to determine, as I previously stated, the validity of a contract on grounds of accountability, et cetera. There is a judicial remedy for backdooring agreements that does not impact the gateway decision of arbitrability. Further, parties are allowed to agree to arbitrate disputes that both know exist or may exist, absent any indication of arbitrability. The instant action is certainly a related issue, quote, unquote, as indicated in the arbitration agreement language that arose after the signing of the agreement with the appellants and is thus subject to arbitration irrespective of Apelli's arguments. Next, I'd like to address Mr. Patterson's and Apelli's arguments that true advice has brought to the court's attention that there was no formal agreement. Again, these are arguments raised in the alternative, and I believe they are distracting. This is Apelli's attempts to have his cake and eat it, too. In this case, there was no formal agreement to provide advisory services, i.e., establishing compensation, terms of services, et cetera. Further, Apelli's complaint is replete with allegations seeking to establish that there was some form of agreement to provide advisory services between Apelli and appellants. I have nothing further, but I  to ask Mr. Michelli if you have something to add. No, I don't. I think you covered it pretty well. Thank you. Any further questions, Justice Connacht or Justice Vansel? No, I do not. All right. Thank you very much, counsel, for your arguments this morning. The court will take them under advisement and render a decision in due course. At this time, the court stands adjourned for the day.